Luigi R. Maraño, J.
This is a motion for an evidentiary hearing to determine:
1. Whether cocaine is a narcotic drug as described in the Penal Law and Public Health Law of the State of New York.
2. To hear evidence, scientific and otherwise, to determine the true propensities, proper classification and legal definition of the substance known as cocaine.
3. To determine whether or not the Legislature erred in listing cocaine as a narcotic drug.
4. To determine that if the Legislature has in fact erred in its classification of cocaine, what the proper classification of cocaine should be.
5. If cocaine is determined not to be a narcotic drug, to determine whether the court should, on its own motion, declare that the laws fixing the definition of cocaine as a narcotic drug, and fixing the penalties thereof, are unconstitutional.
6. To determine whether the court has the power, after hearing and determining evidence, to supersede the Legislature in making a determination that the Legislature’s definition and prescribed penalties are in error and that to apply them would be unconstitutional and a denial of the rights of the accused, and for such other and further relief as to this court may seem just and proper.
The defendant contends that the question is whether or not this court should place itself in the position of deciding for *569 itself whether the Legislature was correct in passing the law listing cocaine as a narcotic substance and whether the court has the power to second guess the Legislature.
The defendant states that: (1) a public interest must exist in the control of cocaine, and (2) the law must have a rational basis. Also, he contends that the law is unconstitutional substantively, and that the penalties are also — as applied to cocaine.
This court will concede for the purpose of this motion that cocaine is not medically a narcotic drug, but a central nervous system stimulant.
The issue then, is whether the Legislature can rationally classify a nonnarcotic central nervous system stimulant as a narcotic for penalty and regulatory purposes.
The defendant has submitted an affidavit, magazine articles, and a lengthy memorandum of law in support of the principal ground on which his motion to dismiss rests, viz., the arbitrary and irrational classification of cocaine as a narcotic drug.
Cocaine is not a narcotic drug in a medical or pharmacological sense, but in law the Legislature has defined it as such. The Legislature has listed cocaine as a narcotic drug because it considered cocaine a dangerous drug which required control in the public interest. The Temporary State Commission to Evaluate the Drug Laws made many studies and conducted public hearings before determining that cocaine was dangerous and that its illegal distribution and use must be regulated. The commission so advised the Legislature in its interim report (NY Legis Doc [1972], No 10). The commission also noted that physiological dependence can develop with intravenous use.
The abuse potential of cocaine may result in: (1) possible overdose death; (2) severe nonfatal acute poisoning from sniffing; (3) chronic psychological effects: cases of demoralization and general deterioration with periodic psychoses. One expert calls cocaine abuse "the most severe of all forms of toxicomania and the most difficult to cure.” (Bejerot, Addiction and Society, pp 66-67.) Some experts state that if cocaine were more easily available, or if more people took to using it intravenously, there might be considerable serious abuse. A cocaine abuser may want to go on taking the drug even though he knows that it is making him paranoid (Joel and Frankel, Der Cocainismus, p 44). The delusions that sometime *570 accompany cocaine abuse resemble paranoid states (Maier, Der Kokainismus, pp 118-119).
The working papers of the National Commission on Reform of Federal Criminal Laws (vol II, p 1085) state that cocaine "should be classified as a dangerous drug because it may precipitate acute anxiety and psychotic episodes, and there is a strong possibility that such episodes may involve aggressive or violent behavior.” The Legislature was advised by the Temporary State Commission to Evaluate the Drug Laws, through its interim report (NY Legis Doc, [1972], No 10, p 67) that, "Although cocaine is a stimulant, rather than a narcotic, it has been generally considered as a narcotic for purposes of regulating its non-medical use. The abuse patterns and potential are somewhat different; however, the differences are not sufficient to warrant separate or different treatment of cocaine in the penal provisions.” The Legislature found that cocaine has a high potential for abuse both psychologically and physically.
The public interest requires that legislative enactments be given recognition and be enforced by the courts as embodying the will of the people (Zorach v Clauson, 303 NY 161, 172, affd 343 US 306).
A legislative enactment carries a strong presumption of constitutionality (Wasmuth v Allen, 14 NY2d 391, 397). "So it is the duty of courts to adopt a construction of a statute that will bring it into harmony with the Constitution and with legislative intent, and no narrow construction of a statute may thwart the legislative design.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 92, subd a.) Statutes are presumed to be valid unless they bear no rational relationship to legitimate legislative purposes (United States v Carolene Prods. Co., 304 US 144, 152-154; United States v Kiffer, 477 F2d 349, 352-353). The courts will declare an act of the Legislature unconstitutional only when the unconstitutionality is "clear” (Garcia v Pan Amer. Airways, 183 Misc 258, affd 269 App Div 287, affd 295 NY 852, cert den 329 US 741). The finding of unconstitutionality must be without doubt (People v Crane, 214 NY 154, 173, affd 239 US 195). The burden of proving invalidity is upon the defendants who challenge the Constitution to establish unconstitutionality beyond a reasonable doubt (Fenster v Leary, 20 NY2d 309, 314; Matter of Fay, 291 NY 198; People v Pagnotta, 25 NY2d 333, 337).
In United States v Smaldone (484 F2d 311, 320, cert den 415 *571 US 915), the Court of Appeals held: "The judicial appraoch to this kind of question is that the classification will be upheld if any facts justify it.”
If there exist facts which reasonably support findings and conclusions that cocaine use leads to effects which pose serious problems for the community, the measures chosen to deal with the causes and effects reflect a societal policy which the courts are bound to observe (Marshall v United States, 414 US 417).
The conduct of an individual and the use of property may be regulated as an exercise of the police power, but to be valid there must be some just, fair, and reasonable connection between the police power and the promotion of the health, comfort, safety and welfare of society (People v Bunis, 9 NY2d 1,4).
There is no merit to defendant’s contention that the classification of cocaine within the definition of the term "narcotic drug” is arbitrary and irrational. Conceding that the statutory definition is broader than the dictionary definition, the Legislature is not required to follow the latter in applying the term to a number of different classes of drugs for purposes of legal control (United States v DiLaura, 394 F Supp 770). In assessing the gravity of a criminal offense, the primary consideration is the harm it causes to society. The Legislature, in making this assessment, could properly view criminal narcotics sales not as a series of isolated transactions, but as symptoms of the widespread and pernicious phenomenon of drug distribution. Social harm in drug distribution is great indeed. The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse (see, generally, President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: Narcotics and Drug Abuse [1967], p 7). Defendants would minimize drug trafficking by arguing that it is not a crime of violence. Because of their illegal occupation, however, drug traffickers do often commit crimes of violence against law enforcement officers and, because of the high stakes, engage in crimes of violence among themselves.
The Legislature may have concluded that the high price of cocaine on the illicit market attracts major drug dealers; or provides huge revenues for organized crime; or that a high-profit enterprise is a high-risk enterprise with attendant criminal activity; or that its use alone or in combination with *572 heroin was dangerous to the community. Any of these considerations is a sufficient basis for a finding by the Legislature that the classification of cocaine as a narcotic drug for penalty purposes has a rational basis (United States v Hobbs, 392 F Supp 444, 447).
In Marshall v United States (414 US 417, 427, supra), the court said: "When Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious to rewrite legislation”.
The courts are not concerned with the wisdom of legislation. They cannot substitute their judgment for that of the Legislature (Williams v Mayor, 289 US 36, 46). As long as the Federal and State Constitutions are not violated, the courts will not interfere with legislative acts — as the propriety, need and wisdom of same are exclusively within the province of the Legislature (8 NY Jur, Constitutional Law, § 72, pp 599-602).
In People v Hoffman (76 Misc 2d 564, 569), Justice Kalina held that: "The court is of the opinion that there is sufficient evidence to show a rational and reasonable basis for the Legislature to classify cocaine as a 'narcotic drug’ and to regulate its sale, possession and use and is of the further opinion that the legislative action bears a real and substantial relation to public health, safety, morals and the general welfare and was a valid exercise of the police power of the State.”
Furthermore, in making his finding, Justice Kalina commented upon the impropriety of holding an evidentiary hearing regarding same: "To hold an evidentiary hearing on this question would put this court in the position of deciding between different opinions by scientific experts on both sides. It would require a rather extensive inquiry and investigation. This is a function more suited to a Legislature than an individual judge in a limited courtroom hearing. In fact, numerous public hearings were conducted by the Temporary State Commission to Evaluate the Drug Laws and their findings were reported to the Legislature and each report stated that cocaine should be treated in the same category as heroin and other true narcotic drugs and the Legislature acted accordingly.” (People v Hoffman, supra, p 569.)
The Legislature had the right and the duty to make the drug laws more effective. Their enactments were within their *573 authority and do not violate any constitutional rights (People v Nebbia, 262 NY 259). "That cocaine is harmful is a determination made within the proper purview of the Legislature.” (People v Puig, 85 Misc 2d 228, 233.) Resolution of the issue raised here belongs with the Legislature and not in the courts. The wisdom of judicial restraint in this area has been expressed by the Supreme Court in Marshall v United States (414 US 417, 427, supra).
The foregoing New York authorities are in accord with Federal decisions in this area, which have consistently upheld the constitutionality of the classification of cocaine as a narcotic drug without the need for an evidentiary hearing. (United States v Harper, 530 F2d 828, affd 533 F2d 1134; United States v Smaldone, 484 F2d 311, cert den 415 US 915, supra; United States v Miller, 387 F Supp 1097, 1098-1099; United States v Amidzich, 396 F Supp 1140, 1147-1148; United States v Hobbs, 392 F Supp 444, supra; United States v DiLaura, 394 F Supp 770, supra; United States Brookins, 383 F Supp 1212; United States v Castro, 401 F Supp 120).
The challenged statutes do not violate the State and Federal Constitutions’ equal protection and due process clauses (People v Selikoff, 35 NY2d 227; People v Daneff, 37 AD2d 918, affd 30 NY2d 793, mot to amd remittitur granted 31 NY2d 667, cert den 410 US 913).
As to the question of punishment posed by the defendant, the court must consider the gravity of the offense, the harm it causes to society, the crimes it generates, and the threat the offender poses to society. "The Legislature might reasonably deem the threat posed to society by each of these defendants a grave one indeed.” (People v Broadie, 37 NY2d 100, 114.)
This court holds that the Legislature had the bases and the right to adopt the punishments imposed for the crimes in question and that such punishments as are provided for in the drug laws are not grossly disproportionate or cruel and unusual in the constitutional sense (People v Broadie, supra; also People v Harvey, 307 NY 588; People v Grant, 242 App Div 310, affd 267 NY 508).
Defendant has failed to meet the burden imposed upon him in order to sustain his constitutional challenge, and he has also failed to make a showing as to why the court should disregard existing New York and Federal case law and hold an evidentiary hearing herein.
*574 This court holds that no evidentiary hearing is required.