UNITED STATES of America, Appellee,

v.

Frederick R. WHEATON,
Defendant-Appellant.

No. 77–1079.

United States Court of Appeals,
First Circuit.

June 30, 1977.

James W. Lawson, Boston, Mass., with whom Oteri & Weinberg, Boston, Mass., was on brief, for appellant.

James E. O'Neil, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and DOOLING, District Judge.*

DOOLING, District Judge.

Defendant appellant entered a plea of guilty to an indictment that charged him in three counts with possessing cocaine with intent to distribute it, with distributing cocaine, and with conspiracy to commit those two offenses, in violation of 21 U.S.C. §§ 841(a)(1), 846. He was sentenced on January 6, 1977, to two years in prison and to a special parole term of three years. The appeal challenges the severity of the sentence on the ground that the sentencing judge based it on misinformation concerning the crime, and that the sentencing judge denied the defendant an opportunity to correct through an evidentiary hearing the supposed misinformation about the crime. The gist of the defendant's claim is that the sentencing was based on the sen-

* Of the Eastern District of New York, sitting by designation.

tencing judge's misunderstanding of the physical, psychic and societal consequences of cocaine use, and that the sentencing judge erred in denying an evidentiary hearing at which defendant could adduce evidence that cocaine was not addictive, criminogenic or frequently used with heroin. The appeal thus raises anew questions that were fully considered in *United States v. Foss*, 1st Cir. 1974, 501 F.2d 522.

Defendant's counsel submitted a Memorandum in Mitigation of Sentence on the day before sentence which emphasized defendant's background, employment record and family situation and commented on defendant's limited share in the crime. The Memorandum drew attention to a recent Massachusetts state court case expressing the opinion that the state law making the possession of cocaine criminal was unconstitutional and finding that cocaine was essentially harmless. The Memorandum was accompanied by copies of the state court opinion and the full hearing record in the state court, including the expert testimony about the properties of cocaine.

On sentence day the court imposed the sentence of two years plus a three year special parole term on defendant as well as on his co-defendant, noting that the offense was punishable by imprisonment for a term of not more than fifteen years and that the special parole term of at least three years was mandatory. Explaining the sentences imposed, the Court said—

"The reason for the sentence basically is the gravity of the offense in the mind of the Court and in the mind of the Congress."

The Court stated that the two defendants were equally culpable, not youths, but mature men, and that the transactions involved a sale of cocaine for the not inconsiderable amount of $1,600. Then the Court said:

"The Court simply rejects flatly the argument urged on behalf of the defendants which is accepted in some quarters, no question about it, that trafficking in cocaine is an offense of less severity than what the Congress had determined . . . ."

The Court reiterated its belief that cocaine was properly classified as a Schedule II drug (21 U.S.C. § 812(c), Schedule II(a)(4)) and stated its rejection of the contrary view of the state court. The Court read from the Working Papers of the National Commission on Reform of Federal Criminal Laws (1970), p. 1085, the passage to the effect that cocaine was potentially productive of psychological rather than physical dependence, was usually taken by heroin addicts in combination with heroin, was less often used alone because, so used, it might produce anxiety and induce psychotic episodes, that cocaine has only limited medical use, that it is usually imported and is priced extremely high in the illicit market, and that it should be classified as a dangerous drug because it may precipitate acute anxiety and psychotic episodes and there is a strong possibility that such episodes might involve aggressive or violent behaviour. The Court stated its belief that a relevant sentencing factor was the crimes committed by cocaine users to sustain their habit. The Court observed that heroin-occasioned offenses were more frequent and that the high rate of crimes traced to the use of heroin had led to the suggestion that heroin be legalized as a means of preventing drug-related crimes. Since, however, Congress had not so decided, the Court felt obliged to accord to the offense not the precise degree of severity Congress had attached to it, but, at least, to take that into account. The Court, finally, expressed the view that

". . . there is a genuine serious adverse effect on the community as a whole from use and selling of cocaine, in my opinion, and it is on that basis that the Court imposes what must look like harsh sentences here, and it is because they might be so interpreted that the Court feels that a statement of the reasons as made should be made."

After the sentence was imposed defendant filed his notice of appeal, a motion to stay execution of sentence and continue release on bail, a motion to reduce sentence,

and a motion for an evidentiary hearing at which defendant proposed to adduce evidence that cocaine was not addictive or criminogenic and was not frequently used in connection with heroin. The motions were denied.

Defendant-appellant argues, first, that he was denied due process by the court's reliance upon the view that cocaine is a dangerous drug when it is allegedly demonstrable through competent expert testimony that cocaine is relatively harmless, and neither addictive nor productive of any different type of psychological dependence than that produced by other and common substances. It is not argued that the Court was not empowered to sentence as it did, and the cases are clear that the underlying statute's attaching of criminal penalties to dealings in cocaine is unassailable because, whether or not cocaine is properly classified pharmacologically in the statute, there is a rational basis for the criminalization of dealings in cocaine. *United States v. Foss, supra,* 501 F.2d at 530; *United States v. Harper,* 9th Cir. 1976, 530 F.2d 828; *United States v. Hobbs,* D.Mass.1975, 392 F.Supp. 444, 446; *United States v. DiLaura,* D.Mass.1974, 394 F.Supp. 770, 772–773; *United States v. Castro,* N.D.Ill.1975, 401 F.Supp. 120, 126. The contention is, rather, that the Court could not lawfully determine the severity of the sentence by reference to findings concerning the properties of cocaine that have been shown to be erroneous. But the argument, even as so made, does, at bottom, tend as was pointed out in *Foss* (501 F.2d at 529–530), to go beyond any issue open to the sentencing Court by attacking the wisdom of the drug laws *per se.* The Court there said (501 F.2d at 530):

> "The criminalization of cocaine reflects a societal policy binding upon the courts; the district court was neither bound nor authorized to .delve into the policies underlying the drug laws except as might be appropriate to exercise fairly its individual sentencing discretion."

Even when such evidence is presented in mitigation of sentence it remains, as *Foss*

pointed out, essentially of a "legislative" variety. It traverses the Congressional findings (21 U.S.C. §§ 801, 802(16)(B), 812(b), (c)) so far as they include cocaine and other derivatives of coca leaves in Schedule II(a) with the opium derivatives not included in Schedule I, and treat them as narcotic drugs. The procedures of 21 U.S.C. § 811(a)(2), (c) have not been used to remove cocaine from Schedule II. The schedules are considered to be republished annually as they appear in the Code of Federal Regulations. See *United States v. Eddy,* 9th Cir. 1976, 549 F.2d 108, 111–113.

The sentencing Court did not decline to consider the very full defense submissions, which were reinforced by the recent opinion of a judge who had accepted the evidence as sufficient to demonstrate the unconstitutionality of a statute penalizing the possession of cocaine. The Court distinguished the criminogenic properties of cocaine from those of heroin, and, as the sentence demonstrates, the Court explicitly did not accord the offense the severity authorized by Congress in the case of Schedule II drugs that are defined as narcotic drugs (21 U.S.C. § 841(b)(1)(A)), nor, indeed, with the severity authorized for non-narcotic drugs (21 U.S.C. § 841(b)(1)(B)).

The defendant argues, further, that the Court erred in denying the motion for an evidentiary hearing at which defendant proposed to offer evidence about the properties of cocaine. However, defendant presented the opinion and supporting record in the state court case, and the papers submitted on the motion after sentence did not describe or outline what other or different evidence was sought to be presented at the hearing requested. As, again, *Foss* pointed out (501 F.2d at 530) the data relevant to the defendant's contention lend themselves better to written submission than to oral presentation at an evidentiary hearing. In any case, the record is plain that the sentencing Court fully understood the contention, had the record of a detailed evidentiary presentation before him, and decided against accepting the contention in its full reach—as under the law he could not, un-

less he found the law invalid as to cocaine. That the presentation was taken into account to the extent that the Court considered appropriate is evident from the record and the terms of the sentence imposed.

It is concluded that the sentence was not imposed under any misapprehension of facts and that there was no error in denying the defendant's motion for an evidentiary hearing.

The judgment of conviction and the denial of defendant's motions for reduction of sentence and for an evidentiary hearing are affirmed.