**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Edward POE, Defendant-
Appellant.**

**No. 72–1111**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 23, 1972.

* [1] Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

**196**

John N. Hogenmuller, Tallahassee, Fla. (Court appointed) for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Robert L. Crongeyer, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

James Edward Poe appeals from his conviction of unlawfully breaking and entering a building on a United States government reservation with the intent to commit a misdemeanor in violation of 18 U.S.C. §§ 7, 13 and Fla.Stat. § 810.05. F.S.A.[1] He contends (1) that the district erred in denying his pretrial motion for an evidentiary hearing to determine whether his identification which placed him at the scene of the crime, was illegally tainted, and (2) that tools found near the scene of the crime were improperly admitted into evidence since they were in no way connected with him. In addition to ruling on these issues during the course of the trial, the district court also considered and rejected them in denying Poe's motion for a new trial. We affirm.

Poe was identified at the trial by the witness Nichols who testified that he had a face to face confrontation with Poe only minutes after the alleged crime occurred. Nichols, a Navy enlisted man at the time, testified that he had gone to the Navy Exchange in response to a call that the burglar alarm had sounded. He saw a man, later identified by Nichols as Poe, walking away from the Exchange and called to him. In response to Nichols' query, Poe said his name was Powell. When Nichols requested Poe to accompany him to the entrance gate of the naval base, Poe took flight. Nichols described him as wearing a red pullover shirt with white horizontal stripes, dungarees and shoes. Less than an hour later police apprehended a man leaving a wooded area near the scene of the crime. The arrested man had on a pair of dungaree pants but no shirt or shoes. However, in the vicinity of the place of arrest the police found a pair of loafer shoes and a red pullover shirt with horizontal white stripes. The arrested man was returned to the vicinity of the Exchange where while sitting in a police car he was identified by Nichols. Poe had no shirt on at the time of this identification. Nichols testified that the man he saw in cus-

---

1. 18 U.S.C. § 7 defines certain areas and places over which the United States has retained "special maritime and territorial jurisdiction."

18 U.S.C. § 13 provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

Fla.Stat. § 810.05 is as follows:

Whoever breaks and enters or enters without breaking any dwelling or store house, or any building, ship, vessel, or railroad car with intent to commit a misdemeanor, shall be punished by imprisonment in the state prison or county jail not exceeding five years, or by fine not exceeding five hundred dollars.

tody was the same person who had taken flight earlier when Nichols requested him to go to the entrance gate.

Poe's pretrial motion for an evidentiary hearing was oral. Poe's brief on motion for new trial, the district court's order denying the motion, and Poe's brief on appeal indicate that he was and is now contending that Nichols' in-court identification was tainted by the identification Nichols made of him while he was in police custody. The district court stated in its order denying the motion for new trial that, "The gist of this testimony was discussed at the time Defendant made his motion for an evidentiary hearing."

■ Poe cites no cases which make it *mandatory* for a district court to hold a hearing every time an accused alleges that an in-court identification has somehow been tainted. Whether a hearing is to be granted in such cases is a matter within the sound discretion of the district court. In United States v. Sutherland,[2] we did "suggest" that a hearing was appropriate where there is a claim of an impermissibly suggestive picture spread; however, we reiterated in United States v. Jackson[3] that the *Sutherland* procedure was not a strict requirement to be followed in every case. In each case the district judge must determine whether the allegations necessitate an evidentiary hearing.

■ While we make no effort to enumerate all the factors which a district judge might consider in deciding whether a hearing is necessary, we approve the guidelines set forth by the Ninth Circuit in Cohen v. United States.[4] In *Cohen* the court held that a hearing was not required on the defendant's motion to suppress and concluded:

> The question is whether the allegations of the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient and factual issues are raised, a hearing is required.[5]

The Sixth Circuit has suggested a similar procedure. In United States v. One 1965 Buick[6] the court, in passing upon the sufficiency of a limited hearing, stated that a hearing on a motion to suppress should not be granted as a matter of course but only when the allegations, if proven, would justify relief. We now review the allegations made by Poe in light of the guidelines herein outlined.

■ Poe challenges the legality of his in-custody identification by Nichols some 40–50 minutes after the crime was committed and after a direct confrontation with Nichols at or near the scene of the crime. The thrust of his argument is that the circumstances surrounding the identification were unduly suggestive and that a formal lineup should have been held. There is no dispute as to the critical facts surrounding the identification. The only alleged suggestive features of the one man show up are that Poe was in a police car at the time he was identified and that he was not wearing a shirt. We judge this contention by the standard articulated in Stovall v. Denno[7] and Simmons v. United States.[8] Under those decisions the to-

2. 428 F.2d 1152 (5th Cir. 1970).

3. 451 F.2d 259 (5th Cir. 1971).

4. 378 F.2d 751 (9th Cir. 1967), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967).

5. *Id.* at 761.

6. 392 F.2d 672 (6th Cir. 1968), vacated on other grounds, Dean et al. v. United States, 402 U.S. 937, 91 S.Ct. 1602, 29 L.Ed.2d 105 (1971).

7. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

8. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967). In discussing pretrial identification by photograph the Supreme Court articulated the standard in *Simmons* as follows:
> Instead, we hold that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pre-

tality of the circumstances must be considered in deciding whether the confrontation is "so unnecessarily suggestive and conducive to irreparable mistaken identification that it violates due process."

■ There is no right to a *lineup*. This court held in Harris v. Dees,[9] applying the *Stovall-Simmons* standard, that an in-custody-at-the-scene identification made shortly after the commission of the crime did not violate due process. The defendants in *Harris* were returned to the scene of the robbery by police and identified by the victim. The court noted that where factors are present which reduce the chance of misidentification there is no due process violation, e. g., where the witness had several minutes to observe the defendant or where the contested identification occurred very soon after the commission of the crime.[10] Both of these factors were present here. Nichols talked with Poe at "arm's length" and then identified him less than an hour later as being the person he had seen earlier.

The district court found nothing "unduly suggestive" about the identification procedures followed here. Accepting Poe's allegations as true we find no error in the conclusion of the district court. Thus, viewing the allegations and facts of this case in light of the guidelines set forth in *Cohen*, we think the district court was justified in deciding that no evidentiary hearing was necessary. An evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested.

■ Poe's second claim concerning the admission of the tools as evidence is similarly without merit. He argues in his brief on appeal that "the tools were not linked to the Appellant in any way except circumstantially." His position seems to be that evidence must be conclusively linked with the accused before it is admissible. There is no such rule.

In Smith v. United States[11] several pry bars were found in the home of Smith's codefendant. The bars were admitted into evidence at Smith's trial over his objection that the evidence failed to establish a connection between him and the bars. This court responded by noting that "whether the tools were actually used in the breaking go to the weight of the evidence rather than its admissibility. The probative weight of the evidence is a question for the jury."[12]

Here the tools were found near the scene of the crime. An expert witness testified that paint scrapings from the door of the burglarized building matched paint found on the tools. Even though the witness Nichols was unable to identify the tools in question, he did testify that when he first saw Poe there was a pry or crowbar sticking out of his back pocket. There was ample connection here to warrant the admission of the tools.

Affirmed.

---

trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph.

9. 421 F.2d 1079 (5th Cir. 1970); see United States v. Gaines, 450 F.2d 186 (3d Cir. 1971); Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969), cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

10. 421 F.2d at 1082.

11. 413 F.2d 1121 (5th Cir. 1969).

12. *Id.* at 1125.